IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KFC CORPORATION,                )
                                )
                Plaintiff,       )
                                )
v.                              )        Civil Action No. 1:15-cv-1077 (AJT/JFA)
                                )
NABIL GAZAHA, *et al.*,          )
                                )
                Defendants.      )
_____ )

## MEMORANDUM OPINION

Defendants/counterclaim plaintiffs Nabil Gazaha and NAYAA, LLC (referred to

individually and collectively as "Gazaha") have filed against plaintiff/counterclaim defendant

KFC Corporation ("KFC") claims for common law breach contract resulting from KFC's

termination of a franchise agreement and for race discrimination in violation of 42 U.S.C. §

1981. For the reasons stated herein, the Court finds that there are no genuine issues of material

fact and that Gazaha has failed as a matter of law to present evidence sufficient to establish, as to

the breach of contract claim, either damages or a right to reinstatement of the franchise; and as to

the race discrimination claim, a *prima facie* case of discrimination, or alternatively, any evidence

of pretext necessary to rebut KFC's asserted non-discriminatory reason for terminating the

franchise agreement. KFC's Motion for Summary Judgment on Defendants' Counterclaims

[Doc. No. 60] is therefore GRANTED.

## I. BACKGROUND

Unless indicated otherwise, the following facts are undisputed:

KFC is a franchise restaurant system operating in the United States and abroad.

Counterclaim plaintiff NAYAA, LLC owned and operated one KFC franchise restaurant (the

"Outlet") in Baltimore, Maryland from June 2007 until its closure in late August 2015. Counterclaim plaintiff Nabil Gazaha is the sole owner of NAYAA, LLC and in this capacity, owned and operated the Outlet. Gazaha is African-American. This Court has federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367. Venue is proper under 28 U.S.C. § 1391, as Gazaha resides in Alexandria, Virginia.

At all material times herein, KFC and Gazaha were parties to a franchise agreement dated July 25, 1997 [Doc. No. 63-10] (the "Agreement"). In the Agreement, KFC granted Gazaha a limited license to use KFC's intellectual property (*e.g.* trademarks, brand name, etc.) to prepare, market, and sell KFC products at the Outlet.

Under the Agreement, KFC may terminate a franchisee for, among other things, failure to "comply with all reasonable standards . . . regarding the operation of the business" which KFC may establish "from time to time." [Doc. No. 63-10 § 5.3]. Included among the Agreement's quality standards is a comprehensive food safety program to ensure product quality under which KFC conducts periodic "Food Safety Compliance Checks" ("FSCCs"). The criteria for these FSCCs are contained in a reference guide, which KFC provides to its franchisees. KFC uses an independent, third-party health inspector, Steritech, to conduct the on-site FSCCs. Minor FSCC violations are called "Secondary" violations, while major violations are called "Significant" violations. The Agreement also grants KFC the right to "enter and inspect the Outlet" to conduct the health and safety inspections. [Doc. No. 63 at 2]. If a franchise outlet is found to be non-compliant with fifteen (15) or more "Secondary" standards or one (1) "Significant" standard during an inspection, the franchise location is deemed "Underperforming," or failing, the health and safety check. *Id.* at 3. In that regard, KFC has a "Four Strike Policy" which it describes as follows:

2

> If an outlet fails an FSCC inspection, it is re-inspected within approximately 30 to 45 days; If the outlet fails a second consecutive FSCC inspection, KFC issues the franchisee a warning letter and conducts a re-inspection within approximately 30 to 45 days; If the outlet fails a third consecutive FSCC inspection, KFC issues a letter declaring the franchisee in default under the Franchise Agreement and providing notice of a potential termination. The default letter states that the outlet must pass the next FSCC inspection in order to cure the default. The letter further explains that if the outlet fails a fourth consecutive inspection, the outlet will have failed to cure the default and the franchise agreement "will terminate without further opportunity to cure." KFC conducts a re-inspection within approximately 30 to 45 days of the franchisee's receipt of the letter; If the outlet fails a fourth consecutive FSCC inspection, the franchise agreement is subject to termination without further opportunity to cure.

*Id.* at 6-7.

Between March and July 2015, Gahaza's Outlet failed four consecutive FSCC inspections. On March 17, 2015, a Steritech inspector named Josh Keilson ("Keilson"), inspected the Outlet and reported that it failed to comply with the "Significant" food safety requirement that certain products be held at a temperature at or below 40 degrees. Steritech also reported 10 other "Secondary" violations at the Outlet. On April 18, 2015, Keilson again inspected the Outlet and reported that the Outlet failed to comply with the requirement that certain foods be held at or below 40 degrees, along with 10 other "Secondary" violations. On May 8, 2015, after the second failed inspection, KFC sent Gazaha a warning letter stating that the Outlet had failed two FSCCs, that it needed to pass the next FSCC, and that if it did not, he would be in default. *Id.* at 7-8. The warning letter continued that if the Outlet went into default, Gazaha could cure only by passing the next FSCC inspection. Lastly, the letter stated that if the default went uncured, the Agreement would be "eligible for termination without further opportunity to cure." *Id.* at 8.

On May 30, 2015, the Outlet once again failed its health and safety inspection because, among other violations, foods were not properly refrigerated at or below 40 degrees. Keilson

3

also reported a finding of "16 to 25 fruit flies, including fruit fly larvae, in the Outlet," which constituted another "Significant" violation.   Keilson reported eight other "Secondary" violations. On June 3, 2015, following the third failed inspection, KFC sent Gazaha a letter notifying him of his default under the Agreement, that the next inspection would be conducted shortly, and that the Outlet must pass that inspection in order to cure the default.   The June 3 letter further warned that failure to cure would result in termination of the Agreement "without further opportunity to cure."   *Id.*   On July 7, 2015, a second Steritech inspector, Penny Schwartz ("Schwartz"), reported that the Outlet had again failed to follow food refrigeration standards because it had stacked food in its walk-in freezer at a depth of more than three inches, which prevents the food from cooling at a rate necessary to minimize the risk of bacterial growth.   This finding constituted a "Significant" violation; and Schwartz reported an additional 11 "Secondary" violations.   On July 28, 2015, KFC sent Gazaha a letter notifying him that because he had failed to cure the default identified in the June 3, 2015 letter, Gazaha's franchise for the Outlet was terminated, effective immediately, together with a demand that he comply with his post-termination obligations, including his non-competition obligations.   [Doc. No. 63-8].

Despite the July 28, 2015 termination of his franchise, Gazaha continued to operate the Outlet as a KFC restaurant until August 23, 2015 by selling non KFC-approved products at the Outlet once he had exhausted his inventory of KFC-approved products.   Gazaha also ceased paying royalties and advertising cooperative fees to KFC as required by the Agreement [Doc. No. 63 at 7-8] and posted signs at the Outlet publically accusing KFC of racial discrimination.

Accordingly, on August 24, 2015, KFC filed this action to enjoin Gazaha from operating the Outlet.   [Doc. No. 1].   On August 26, 2015, KFC filed a Motion for a Preliminary Injunction [Doc. No. 4]; and on September 14, 2015, after a hearing, the Court granted that Motion and

enjoined Gazaha from operating the Outlet as a KFC franchise, but did permit Gazaha to operate a restaurant from that location consistent with his non-competition obligations under the Agreement. [Doc. No. 21]. The preliminary injunction remains operative.

On September 24, 2015, Gazaha filed an Answer, Defenses, Counterclaims and Demand for Jury Trial. [Doc. No. 25]. In Count I of the Counterclaim for breach of contract, Gazaha alleges that KFC improperly terminated the Agreement and seeks reinstatement of the Agreement or at least $750,000 in damages. *Id.* ¶¶ 23-26. In Count II, Gazaha alleges intentional race discrimination and wrongful termination in violation of 42 U.S.C. § 1981 on the grounds that KFC terminated the Agreement because Gazaha is African-American and seeks at least $750,000 in damages and $7.5 million in punitive damages. *Id.* ¶¶ 27-35.

On January 22, 2016, KFC moved for summary judgment on Gazaha's counterclaims [Doc. No. 60] (the "Motion"). The Court held a hearing on February 12, 2016 [Doc. No. 90], following which it took the matter under advisement.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden to show that a

genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most

favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Lettieri v. Equant Inc.*,

478 F.3d 640, 642 (4th Cir. 2007). To defeat a properly supported summary judgment motion,

the non-moving party "must set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 U.S. at 248. Whether a fact is considered "material" is determined by

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." *Id.*

### III. ANALYSIS

KFC argues that Gazaha's counterclaims fail because he cannot establish damages or a

right to reinstatement with respect to his breach of contract claim in Count I, and because he

cannot present any direct evidence of discrimination or satisfy the *McDonnell Douglas* burden-

shifting framework for discrimination with respect to his racial discrimination claim in Count II.

*See* [Doc. No. 63].

It is undisputed that Kentucky law governs the Agreement pursuant to the parties' choice

of law. Under Kentucky law, a fundamental element of a breach of contract claim is damages.

*Barnett v. Mercy Health Partners-Lourdes Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007).

Accordingly, failure to show damages entitles the defending party to judgment as a matter of

law. *Id.*

The record before the Court—including Gazaha's financial statements, tax returns and

audit reports—establishes, without contrary evidence, that the Outlet consistently lost money

from 2011 through 2015. *See* [Doc. No. 63 at 20-23]. In opposition to this contention, Gazaha

claims that the losses were due to the fact that Gazaha "runs a large number of arguably personal

6

expenses through his business" such as his home mortgage and auto lease, and that therefore, the book-losses are not an accurate representation of the Outlet's profitability. [Doc. No. 72 at 10]. The evidence is uncontradicted, however, that these "arguably personal expenses" are, in fact, related to and claimed as business expenses associated with operating the Outlet. For example, the loan secured by his personal residence was used to purchase and operate the Outlet.

In further support of his damage claim, Gazaha relies on alleged offers to purchase the Outlet and Gazaha's own expert report, in which he opines that the value of his terminated KFC franchise "is approximately $750,000." [Doc. No. 54, Ex. 1]. None of this proffered evidence is likely admissible under the applicable rules of evidence, but in any event, it does not have any probative value as to any recoverable damages as measured by the extent to which any wrongful termination on the part of KFC reduced the value that the unprofitable Outlet would have had without the franchise having been terminated. Notably absent in that regard is any evidence, from an expert or otherwise, concerning what the business was worth before termination of the franchise agreement, that is, evidence to establish the necessary element of causation. For these reasons, the Court finds that Gazaha has failed as a matter of law to present evidence sufficient to establish that he suffered any damages as a result of KFC's termination of his franchise, even assuming the termination was wrongful.

The evidence is also insufficient as a matter of law with respect to Gazaha's alternative request for relief in the form of reinstatement of the franchise agreement. Here, reinstatement of the Agreement would constitute the granting of an equitable remedy in circumstances in which such relief is not available. *See, e.g., S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("as a matter of law . . . a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's

7

trademarks") (quoting *Burger King Corp. v. Hall*, 770 F. Supp. 633, 638 (S.D. Fla. 1991)).  In

support of his request for this equitable relief, Gazaha points to cases in which courts have

enjoined the termination of a franchise agreement or the pending closure of franchises where the

termination had not yet become effective.  *See, e.g.*, *Semmes Motors, Inc. v. Ford Motor Co.*, 429

F.2d 1197, 1201 (2d Cir. 1970).  But here, termination has already occurred.  Moreover, Gazaha

has long since ceased all operations as a KFC franchise, failed to pay fees and royalty payments

required under the Agreement for the period before the effective date of the termination and has

not claimed that he is ready, willing, and able to continue operating the Outlet in accordance with

the Agreement.  Indeed, since the Outlet's termination, he has effectively repudiated or cancelled

the KFC franchise Agreement by selling competing non-KFC products in violation of the

Agreement's restrictions.  In short, regardless of whether KFC improperly terminated the

franchise, Gazaha has acted since that termination in a way that is inconsistent with his request

for equitable relief in the form of reinstatement.  *See, e.g.*, *S&R Corp.*, 968 F.2d at 376 ("when

one party to a contract feels that the other contracting party has breached its agreement, the non-

breaching party may either stop performance and assume the contract is avoided, or continue

performance and sue for damages"); *see also London Bucket Co. v. Stewart*, 314 Ky. 832, 835

(Ky. App. 1951) (reversing award of specific performance because "ordinarily damages are an

adequate remedy").

　　With respect to Gazaha's claim in Count II for intentional race discrimination and

unlawful termination in violation of 42 U.S.C. § 1981, the Court finds that he has likewise failed

to adduce evidence sufficient to allow a reasonable trier of fact to find in his favor.  42 U.S.C. §

1981(b) forbids racial discrimination in the making and enforcing of contracts.  Section 1981

claims are properly analyzed under the Title VII framework.  *Thompson v. Potomac Elec. Power*

*Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002). Accordingly, the complaining party must come

forward with "direct evidence" of racial discrimination or satisfy the *McDonnell Douglas*

burden-shifting scheme. *Davis v. Am. Soc. of Civil Eng'rs*, 330 F. Supp. 2d 647, 654-55 (E.D.

Va. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Direct evidence"

of discrimination under *McDonnell Douglas* is defined as "conduct or statements that both (1)

reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested . . .

decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (internal quotations

omitted). Such a showing of direct evidence "essentially requires an admission by the decision-

maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*,

219 F.3d 612, 616 (7th Cir. 2000).

 If there is no direct evidence of racial discrimination, then the complaining party must

proceed under the *McDonnell Douglas* framework. First, the complaining party must establish a

*prima facie* case of racial discrimination. In the context of Section 1981 claims concerning

franchise terminations, the complaining party under *McDonnell Douglas* must show:

> (1) that [they] are members of a protected class; (2) that the allegedly
> discriminatory conduct concerned one or more of the activities enumerated
> in the statute . . . and (3) that the [franchisor] treated the [franchisee] less
> favorably with regard to the allegedly discriminatory act than [the
> franchisor] treated other similarly situated persons who were outside the
> [franchisor's] protected class.

*Dunkin' Donuts Franchised Restaurants LLC v. Sandip, Inc.*, 712 F. Supp. 2d 1325, 1328 (N.D.

Ga. 2010); *see also Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)

(applying similar test under *McDonnell Douglas* in context of employment discrimination).

 Finally, if the complaining party establishes a *prima facie* case under *McDonnell*

*Douglas*, then the defending party may articulate "a legitimate, nondiscriminatory reason for its

adverse employment action." *Holland*, 487 F.3d at 214 (internal quotations and citations omitted). "This burden . . . is a burden of production, not persuasion." *Id.* If the defending party articulates such a non-discriminatory reason, the burden once again shifts and the claimant must "prove that [the other party]'s proffered reason was mere pretext and that race was the real reason for . . . termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)).

Gazaha offers only two pieces of evidence with regard to discrimination and neither of them is "direct." First, Gazaha points to statements by Keilson and an unnamed KFC employee about his neighborhood not being "safe." Second, he points to statistical evidence purporting to show that KFC terminates African-American-owned franchises at higher rates than Caucasian-owned franchises. [Doc. No. 72 at 14-16]. None of this evidence, separately or collectively, is sufficient to avoid summary judgment.

First, the alleged comments, even when taken in the light most favorable to Gazaha, are largely about the Baltimore neighborhood where the Outlet is located. That is, the allegedly racist comments made by Keilson and the unnamed KFC employee amount to statements that the neighborhood surrounding the restaurant is unsafe, that they did not want to leave a car there for fear of it being targeted for vandalism or robbery, and that did not want to visit the Outlet at night. Gazaha also claims that the offending parties made a reference to "you people," and a comment that the health inspection issue is "black and white." [Doc. No. 76 at 2-3]. The probative value of these isolated, casual comments is from zero to exceedingly marginal. More important is that none was made by anyone in a position of authority at KFC with the ability to terminate the Agreement.

Second, the statistical data, even data showing racial disparities, cannot by itself support a

Title VII/Section 1981 claim for racial discrimination. *Diamond v. T. Rowe Price Assoc., Inc.*,

852 F. Supp. 372, 408 (D. Md. 1994) ("In the Fourth Circuit . . . statistical evidence alone is

insufficient to raise an inference of discriminatory intent in a disparate treatment case"); *see*

*also id.* n.172 (citing cases); *McKleskey v. Kemp*, 481 U.S. 279, 297 (1987). Here, Gazaha has

presented nothing other than statistical data as to the termination rates of KFC franchises.

Without additional evidence that any of these terminations was racially motivated or evidence

demonstrating that Gazaha himself was targeted for franchise termination because of his race, the

statistical evidence, standing alone, is insufficient to create a triable issue of fact.

Gazaha further argues that termination of the Agreement was improper because the FSCC

inspections were faulty and that the decision to terminate the Agreement was otherwise

substantively incorrect. But in order to raise an inference of discrimination, a complaining party

must argue something more than that the employment decision at issue was wrongly decided.

Indeed, this argument is, as recognized by the Fourth Circuit, wholly "unexceptional." *Laing*,

703 F.3d at 713 ("all [the complaining party] has proven is the unexceptional fact that she

disagrees with the outcome of [the] investigation. But such disagreement does not prove . . . the

burden shifting framework").

Finally, even assuming *arguendo* that Gazaha could make out a *prima facie* case for race

discrimination in violation of Section 1981, KFC offers a legitimate, nondiscriminatory business

reason for terminating the Agreement: that Gazaha failed four consecutive health inspections.

Although Gazaha disputes that these failed inspections justified the termination of the franchise,

he offers no evidence that would raise an inference that KFC's reasons for termination were a

11

pretext for racial discrimination.  Accordingly, Gazaha's claims are, as a matter of law,

insufficient to satisfy the *McDonnell Douglas* burden-shifting regime.

## IV. CONCLUSION

For the reasons stated above, the Court finds and concludes that there are no genuine

issues of material fact and that counterclaim defendant KFC Corporation is entitled to judgment

as a matter of law as to counterclaim plaintiffs Nabil Gazaha and NAYAA LLC's counterclaims.

Accordingly, KFC's Motion for Summary Judgment on Defendants' Counterclaims is granted

and Gazaha's counterclaims are dismissed.

An appropriate Order will issue.


Alexandria, Virginia
March 24, 2016

/s/
Anthony J. Trenga
United States District Judge